```
UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF OHIO
-------------------------------------------------------
                                                :
UNITED STATES OF AMERICA,                       :       CASE NO. 1:06-CR-345
                                                :
            Plaintiff,                          :
                                                :
vs.                                             :       OPINION & ORDER
                                                :       [Resolving Doc. Nos. 109, 110]
JOSEPH E. MIHALICH, AVERY KLEIN,                :
RICHARD OTTERMAN, PHILIP F.                     :
GEORGE, JR.,                                    :
                                                :
            Defendants.                         :
                                                :
-------------------------------------------------------
```

JAMES S. GWIN, UNITED STATES DISTRICT JUDGE:

With this Opinion and Order, the Court decides whether to grant two motions in limine brought by the Government that raise three issues of law: first, whether a "good faith" defense is available under Section 1955 of Title 18 of the United States Code; second, whether an "advice of counsel" defense is available under that same federal statute; and, third, whether operators or conductors of "games of chance" or "schemes of chance" permissibly compensated themselves or their employees under state and federal law.

For the following reasons, the Court **GRANTS** the Government's motion to preclude Defendants from raising "good faith" and "advice of counsel" defenses to the Section 1955 charges against them. [Doc. 109.]  The Court also **GRANTS** the Government's motion to preclude Defendants from arguing that the law permitted them to pay salaries to employees associated with their gambling operations from the proceeds of their gambling activities. [Doc. 110.]

Case No. 1:06-CR-345
Gwin, J.

## I.  Background

On November 28, 2006, the Government filed two motions in limine. [Docs. 109, 110.]  In its first motion, the Government moves the Court for an Order to preclude "Defendants from introducing evidence or making any remarks during opening statement and/or closing argument concerning a good faith defense or reliance on advice of counsel" to counter the Section 1955 charges against them. [Doc. 109.]  The Government says that, because Section 1955 is a general intent statute, the good faith defense does not apply to charges under this provision.  *Id.*  To support its contention, the Government cites to *United States v. Able*, 167 F.3d 1021 (6th Cir. 1999) (Gilman, J.).  *Id.*  The Government also says that Defendants cannot rely on an "advice of counsel" defense, although it does not provide direct legal support for this claim.  *Id.*

In its second motion in limine, the Government moves the Court for an Order "precluding the Defendants from presenting evidence, opening statement or closing argument claiming that it was permissible to pay employees associated with the operation of the gambling activities charged in the indictment." [Doc. 110.]  The Government says that such a defense would be inconsistent with the holdings of the Sixth Circuit, the Northern District of Ohio, Ohio case law, and the plain language of the statute.  *Id.*  In support of its argument, the Government cites *United States v. Simons*, 150 Fed. Appx. 428 (6th Cir. 2005) (unpublished) (Gilman, J.), *United States v. Davis et al.*, Case No. 5:06-CR-134 (N.D. Ohio, Aug. 4, 2006) (Economus, J.), *Freedom Road Foundation v. Ohio Department of Liquor Control*, 80 Ohio St. 3d 202 (1997), and various Chapters of the Ohio Revised Code.  *Id.*

With regard to Ohio's law, the Government specifically cites to Section 2915.02(D) that provides: "No person shall receive any commission, wage, salary, reward, tip, donation, gratuity,

Case No. 1:06-CR-345
Gwin, J.

or other form of compensation, directly or indirectly, for operating or assisting in operating any scheme or game of chance." OHIO. REV. C. § 2915.02(D)(2). In its reply brief, the Government also relies on Section 1955(e) of Title 18 of the United States Code that allows "compensation of actual expenses" incurred by an individual in the conduct of certain exempted bingo games, lotteries, and schemes of chance by charitable organizations. [Doc. 130.] Thus, the Government says that "[i]t would be entirely unlawful . . . for the defendants or any subordinates to be paid for their efforts in establishing, promoting, or operating the games or schemes of chance." [Doc. 110.]

On November 30, 2006, Defendants Otterman and Mihalich filed opposition to the Government's motions. [Docs. 113, 115.] Both Defendants argue that Ohio's law at the time of their allegedly illegal gambling activity permitted them to compensate themselves and their employees. *Id.* Defendants argue that the law allowed them to pay "reasonable and necessary expenses," including salaries, commissions, and wages. *Id.* Defendant OTTERMAN says that the Government misconstrues *Simons* and *Freedom Road* to conclude those paying employees from gambling proceeds is illegal. [Doc. 113.] Otterman asserts that "*Simons* involved a different version of the Ohio Revised Code, one that they had revised and from the version in effect at the time of the events described in the current indictment." *Id.* Otterman's "conduct must be evaluated by the statutory scheme in effect during the time it occurred, and thus the pre-7/1/03 statutory scheme applies here rather than the current scheme." *Id.* Otterman concedes that, both before and after Ohio changed its law, Section 2915.02(D) contained a prohibition against the payment of "any commission, wage, salary, reward . . . ." *Id.* However, Otterman erroneously reads the statute to wrongly conclude that the prohibition "does not apply to 'schemes of chance conducted by a charitable organization' described in [Section] 2915.02(D)(1)." *Id.* Otterman follows this error to mistakenly conclude that

Case No. 1:06-CR-345
Gwin, J.

"there is no statutory basis for preventing [him] from arguing that it was permissible, under 2915.02(D)(1), to receive compensation." *Id.*

Defendant Mihalich says that "he has no intention of providing a 'good faith' defense to the offense charged in Count 1 of the indictment." [Doc. 115.] Instead, Mihalich's theory of defense appears to be that he is not guilty of illegal gambling, because his bingo operations were legal during the time period charged in the indictment. *Id.* Further, Mihalich relied on "[t]he advice of [his] attorneys regarding the 'gray area' of the law as to the payment of a store manager by [the Prisma Center]." *Id.* As a result,

> [t]he advice of the attorneys regarding the "gray area" of the law as to the payment of a store manager by the [Prisma Center], should be permitted for the jury to hear not as a "good faith" defense to the gambling offense charged in Count 1, but as a fact concerning the reasonableness of the Defendant's conduct in dealing with the Prisma Center and the conduct of the Prisma Center in the operation of its charitable 501(c)(3) "instant bingo" stores regarding the payment of "reasonable and necessary" expenses.

*Id.* Mihalich admits that the Prisma Center "may have paid its managers working in Prisma's 'instant bingo' parlors as a 'reasonable or necessary expense,' but this specific area of the law was very much unsettled and a 'gray area' according to all existing case law during the time period alleged in the indictment." *Id.* Like Otterman, Mihalich cites to Section 2915.02(D) as the operative Ohio law at the time of his indicted gambling activity. *Id.* Mihalich then uniquely attempts to argue that "reasonable and necessary expenses" include the payment of a "commission, wage, salary, reward, tip, donation, gratuity, or other form of compensation, directly or indirectly, for operating or assisting in operating any scheme or game of chance." *Id.* The statute's language is not "gray;" it is plain.

II. Legal Standard

-4-

Case No. 1:06-CR-345
Gwin, J.

*A. "Good Faith" and "Advice of Counsel" Are Not Defenses to General Intent Crimes*

The federal statutes that prohibit gambling define impermissible criminal activity in terms of both general, and specific, intent. *Compare, e.g.*, 18 U.S.C. § 1955 (general intent statute); 18 U.S.C. § 1956 (specific intent statute); 18 U.S.C. § 1957 (specific intent statute). Section 1955 plainly requires the Government to show a defendant's general intent to engage in the prohibited activity to be convicted of a crime under the statute. Section 1955 provides, in relevant part, as follows:

> (a) Whoever conducts, finances, manages, supervises, directs, or owns all or part of an illegal gambling business shall be fined . . . or imprisoned . . . or both.
> (b) As used in this section --
> > (1) "illegal gambling business" means a gambling business which --
> > > (i) is a violation of the law of a State or political subdivision in which it is conducted;
> > > (ii) involves five or more persons who conduct, finance, manage, supervise, direct, or own all or part of such businesses; and
> > > (iii) has been or remains in substantially continuous operation for a period in excess of thirty days or has a gross revenue of $2,000 on any single day.

18 U.S.C. § 1955.

The Sixth Circuit recognizes that Section 1955 is a general intent statute. *See, e.g.*, *United States v. Ables*, 167 F.3d 1021, 1031 (6th Cir. 1999) (Gilman, J.) (noting that "the crime of conducting an illegal gambling business as defined under § 1955 is one of general intent"). This Court also has previously established the general intent nature of Section 1955. *See, e.g.*, *United States v. Mihalich et al.*, Case No. 06-CR-345 (N.D. Ohio Oct. 16, 2006) [Doc. 85].

Case No. 1:06-CR-345
Gwin, J.

In contrast, Sections 1956 and 1957 are specific intent statutes under which the Government must establish a defendant's criminal scienter to secure his conviction. Section 1956 provides, in relevant part, as follows:

> (a)(1) Whoever, *knowing* that the property involved in a financial transaction represents the proceeds of some form of unlawful activity, conducts or attempts to conduct such a financial transaction which in fact involves the proceeds of specified unlawful activity --
> (A)(i) with the intent to promote the carrying on of specified unlawful activity; . . . shall be sentenced to a fine . . . or imprisonment . . . or both.

18 U.S.C. § 1956 (emphasis added).

Similarly, Section 1957 provides, in relevant part, as follows:

> (a) Whoever . . . *knowingly* engages or attempts to engage in a monetary transaction in criminally derived property that is of a value greater than $10,000 and is derived from specified unlawful activity, shall be punished as provided in subsection (b).

18 U.S.C. § 1957 (emphasis added).

Defenses of "good faith" are not available to counter general intent crimes, including those charged under Section 1955. *See, e.g.*, *Ables*, 167 F.3d at 1031 (noting that any good faith belief that the bingo operations were legal was not a defense to Section 1955 gambling charges, because these offenses are general intent crimes). *See also United States v. Sims*, 1995 WL 620965, at *7 (6th Cir. Oct. 19, 1995) (unpublished disposition). Thus, under Section 1955, it is unavailing that a defendant took "good faith" actions upon advice of counsel. *See, e.g.*, *Ables*, 167 F.3d at 1031.

With regard to Sections 1956 and 1957, and any other specific intent crimes, defenses of good faith and reasonable reliance on the advice of counsel are available to a defendant who can negate a charged crime's specific intent element by establishing that he (1) fully disclosed all pertinent facts to his attorney and (2) relied on his attorney's advice in good faith. *See, e.g.*, *United*

-6-

Case No. 1:06-CR-345
Gwin, J.

*States v. Dixon*, 1999 WL 98578, at *4 (6th Cir. 1999); *United States v. Duncan*, 850 F.2d 1104 (6th Cir. 1988); *United States v. Swafford*, 2005 U.S. Dist. LEXIS 26890, at *13 (E.D. Tenn. Nov. 3, 2005). In all instances, however, the advice of counsel must be reasonable and lawful. *See, e.g.*, *United States v. Moss*, 2003 U.S. App. LEXIS 14247, at *24-25 (6th Cir. 2003).

*B. Established Federal and State Law Precludes Compensation From Charitable Gambling Operations or Activities*

To establish the first element of the Section 1955 violation alleged in this case, the Government must demonstrate that Defendants' gambling activities violated Chapter 2915.02 of the Ohio Revised Code. The Ohio General Assembly amended Chapter 2915.02 in 2003. The Court has analyzed the former version and determines that no *ex post facto* concerns are at issue in this case for the purpose of resolving the instant motions in limine. The Court, therefore, refers to the present version of Chapter 2915.02 throughout this Order.

Chapter Section 2915.02 provides, in relevant part, that

> (A) no person shall do any of the following:
>
> * * *
>
> (2) Establish, promote, or operate or knowingly engage in conduct that facilitates any game of chance conducted for profit or any scheme of chance.
>
> * * *
>
> (5) With purpose to violate (A)(1), (2), (3), or (4) of this section, and acquire, possess, control, or operate any gambling device . . .
>
> * * *
>
> (B) For purposes of division . . . (A)(2) of this section, a person facilitates a game of chance conducted for profit or scheme of chance if the person in any way knowingly aides in the conduct or operation

-7-

Case No. 1:06-CR-345
Gwin, J.

> of any such scheme or game, including, without limitation, playing
> any such game or scheme.

OHIO REV. C. ANN. § 2915.02.

Although Ohio prohibits gambling for profit, the General Assembly has created a limited exception for charitable gambling. Section 2915.02(D)(1) allows charitable organizations with certain income tax exemptions from the Internal Revenue Service ("IRS") to conduct for-profit "games of chance" where "all of the money or assets received from the games of chance are used by, or given, donated, or otherwise transferred" to charitable organizations or tax exempt organizations as-defined by the IRS. Under Ohio's charitable organization exemption, "[n]o person shall receive any commission, wage, salary, reward, tip, donation, gratuity, or other form of compensation, directly or indirectly, for operating or assisting in the operation of any scheme or game of chance." OHIO REV. C. Ann. § 2915.02(D).[1]

As noted by a sister Court in this district, a substantial number of Ohio courts have interpreted the charitable organization exemption in a variety of manners. *See United States v. Davis*, Case No.: 5:06-CR-134 (N.D. Ohio Aug. 4, 2006) (Economus, J.). The Court further finds it useful to adopt the reasoning and rules of law set forth by that Court to the Government's instant motions. Thus, the Court agrees that

> the most reasonable statutory construction of the charitable gambling
> exemption is that the Ohio General Assembly deemed existing
> limitations on charitable and tax-exempt organizations – for example,
> those provided in the Internal Revenue Code – as sufficient sources
> to govern the conduct of those organizations receiving gambling
> proceeds. . . . While it is uncontroverted that federal law authorizes
> a tax-exempt organization to utilize funds to pay ordinary and

---

[1] Again, with regard to Defendants' ex post facto arguments, this prohibition appears in Ohio's Code both before and after the State revised its gambling laws in July 2003. *See, e.g.*, *Anderson's 2002-2 Ohio Criminal Law Handbook*, at 84; *Page's Ohio Revised Code Annotated* (current through Nov. 21, 2006).

Case No. 1:06-CR-345
Gwin, J.

> necessary business expenses such as employee salaries, said laws also proscribe these organizations from utilizing gambling proceeds for anything other than actual expenses. The federal charitable gambling exemption, codified at [T]itle 18 U.S.C. § 1955(e) provides:
>
>> This section [criminalizing gambling] shall not apply to any bingo game, lottery, or similar game of chance conducted by an organization exempt from tax under paragraph (3) of subsection (c) of section 501 of the Internal Revenue Code of 1954, as amended [26 USCS § 501(c)(3)], if ***no part of the gross receipts derived from such activity inures to the benefit of any private shareholder, member, or employee of such organization except as compensation for actual expenses incurred by him in the conduct of such activity.***
>
> 18 U.S.C. § 1955(e) (emphasis added). Consequently, federal law prohibits a charitable or tax-exempt organization from utilizing gambling proceeds to provide the organization's employees with salaries.
>
> Otherwise stated, the Ohio General Assembly has authorized only those organizations described as charities or tax-exempt by various sections of federal law – specifically, provisions of the Internal Revenue Code – to conduct gambling operations and receive gambling proceeds. . . The Ohio General Assembly did not prescribe rules for the internal governance and operation of those charitable and tax-exempt organizations – indeed, it left that responsibility to existing federal law. . . . [which] provides that a charitable organization is prohibited from providing any compensation beyond actual expenses to its employees that is derived from gambling proceeds. *See* 18 U.S.C. § 1955(e). Consequently, charitable and tax-exempt organizations that conduct gambling operations pursuant to Ohio's charitable gambling exemption are otherwise prohibited by 18 U.S.C. § 1955(e) from utilizing the gambling proceeds to provide any benefit, including salaries, to a "private shareholder, member, or employee of such organization except as compensation for actual expenses incurred by him in the conduct of such activity.

*United States v. Davis*, Case No. 5:06-CR-134 (N.D. Ohio Aug. 4, 2006), at 9-11.

Thus, with this as the law of the case, the Court lacks any rationale to preclude the

Case No. 1:06-CR-345
Gwin, J.

Government from arguing at trial that salaries paid by Defendants were illegal for the reasons stated above.

### III. Conclusion

For the foregoing reasons, the Court **GRANTS** the Government's motion to preclude Defendants from raising "good faith" and "advice of counsel" defenses to the Section 1955 charges against them. [Doc. 109.] The Court also **GRANTS** the Government's motion to preclude Defendants from arguing that the law permitted them to pay salaries to employees associated with their gambling operations from the proceeds of their gambling activities. [Doc. 110.]

IT IS SO ORDERED.


Dated: December 5, 2006               s/    *James S. Gwin*
                                      JAMES S. GWIN
                                      UNITED STATES DISTRICT JUDGE